ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| HÉCTOR ALERS BONES<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | **KLRA202400428** | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: 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<br><br>Sobre: Informe disciplinario |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de septiembre de 2024.

Comparece ante este foro el Sr. Héctor Alers Bones (señor Alers o "el recurrente"), por derecho propio y en forma *pauperis*, confinado, mediante recurso de revisión judicial, solicitando la revisión de una *Resolución* del Departamento de Corrección y Rehabilitación (DCR o "parte recurrida"), emitida el 8 de julio de 2024. Mediante el referido dictamen, el DCR encontró incurso de haber infringido el Código 104 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, (Reglamento Núm. 9221). En consecuencia, le impusieron como sanción la suspensión de los privilegios de visita y comisaria por treinta (30) días.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

### I.

Según surge del expediente, el 22 de mayo de 2024, la Sargento Sylvette N. Rivera Morales (Sgto. Rivera),

presentó un *Informe Disciplinario – Informe de Querella de Incidente Disciplinario* en contra del recurrente, por hechos alegadamente ocurridos en la misma fecha, a las 8:40am, en el Módulo E en la Celda 202, de la Facilidad Médica Ponce 500.[1] En la *Querella*, bajo el inciso que versa sobre la "*Descripción específica del acto prohibido*", la Sgto. Rivera esbozó que "[m]ediante una ronda en el Módulo E en la Celda 202 se observa que la salida del conducto del aire acondicionado esta tapado con papel plástico."

A tenor con el *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, el 6 de junio de 2024, le entregaron al recurrente la *Citación para Vista Administrativa Disciplinaria*.[2] En esta, le informaron que el 2 de julio de 2024 a las 9:00am celebrarían la vista ante el Oficial Examinador.

Celebrada la vista, el 8 de julio de 2024, la Oficial Examinadora del DCR, luego del correspondiente análisis, emitió la *Resolución* recurrida.[3] Mediante la cual, encontró incurso al recurrente de violar el Código 104, *uso de artículos para obstruir mecanismos de seguridad* del Reglamento Núm. 9221. En su *Resolución* la Oficial Examinadora enumeró las siguientes determinaciones de hechos:

1. Que el día 22 de mayo de 2024, el querellante Sylvette N Rivera se encontraba en el Módulo E de la institución.

2. Que observó que se estaba registrando la celda 202, donde vive el querellado y el confinado Magdiel.

---

[1] *Informe Disciplinario*, pág. 5 del apéndice del recurso.
[2] *Citación para Vista Administrativa Disciplinaria*, pág. 11 del apéndice del recurso.
[3] *Resolución*, págs. 6-7 del apéndice del recurso.

3. Que el querellado tenía actitudes negativas y estaba molesto.

4. Que se le encontró el conducto del aire acondicionado tapado.

5. Que al verificar tenía plástico puesto.

6. Que el día de la vista el querellado negó los hechos.

En desacuerdo, el 9 de julio de 2024, el señor Alers presentó una *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado*.[4] Alegó que, la *Querella* presentada en su contra era viciosa y malintencionada, puesto que, había presentado una declaración jurada de su compañero de celda, quien indicó que el recurrente "no tenía nada que ver en dicho acto prohibido", que "Magdiel Bonano (compañero de celda) asum[ía] toda la responsabilidad incluso desde el mismo día de los hechos lo dejó saber." Asimismo, indicó que la *Resolución* tenía varios errores, incluyendo en la conclusión de derecho, cuando establecieron que había cometido un acto prohibido bajo el Código 109 del Reglamento Núm. 9221, y no bajo el Código 104 del precitado Reglamento. Por ello, planteó que se debió encontrar no incurso en el alegado acto prohibido.

El 11 de julio de 2024, el DCR emitió una *Determinación* respecto a la solicitud de reconsideración del recurrente.[5] Mediante la cual, el Oficial de Reconsideración denegó el recurso.

Aún inconforme, el 5 de agosto de 2024 el recurrente presentó un recurso de apelación ante este Foro, solicitando que revoquemos la *Resolución* recurrida.

---

[4] *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado*, págs. 2-3 del apéndice del recurso.
[5] *Determinación*, págs. 9-10 del apéndice del recurso. Conforme surge de la *Determinación*, la notificación de la determinación al recurrente fue el 24 de julio de 2024, pág. 10, *Íd*.

**II.**

**-A-**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado.[6] *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615-616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289-290 (1992).

---

[6] Los fundamentos aportados en la muy reciente decisión del Tribunal Supremo Federal en *Loper Bright Enterprises et al., v. Raimondo,* 603 U.S. ___ (2024), 144 S.Ct. 2444, cuestionan en lo esencial buena parte de la jurisprudencia que dirige el proceso de revisión por los tribunales de las determinaciones administrativas. Sin embargo, juzgamos que la situación fáctica en el caso ante nuestra atención no nos requiere ahondar sobre el asunto.

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Rivera Concepción v. ARPE*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. PR v. JP*, 146 DPR 64, 130 (1998); *ARPE v. JACL*, 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM,* 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro

ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. DRNA,* 186 DPR 564, 584 (2012); *Marina Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

-B-

El Reglamento Núm. 9221 fue aprobado con el propósito de establecer las disposiciones reglamentarias aplicables a los confinados que cometan o intenten cometer un acto prohibido bajo la jurisdicción del DCR. Regla 3 (11) del Reglamento Núm. 9221, *supra*. A través de este se dispuso de un mecanismo para imponer medidas disciplinarias en las instituciones correccionales, mientras se le garantiza un debido proceso de ley a los confinados. Regla 3, Reglamento Núm. 9221, *supra*.

En lo pertinente, entre los actos prohibidos en el referido Reglamento se encuentran:

> (104) Prohíbe la posesión, fabricación, uso, distribución, introducción de herramientas, instrumentos, artículos, objetos o sustancias que afecten la seguridad institucional o que puedan utilizarse para obstruir, inutilizar, romper cerraduras, portones, cualquier artículo, mecanismo o procedimiento de seguridad. Regla 15 (104) del Reglamento Núm. 9221.

De otra parte, la Regla 6 del Reglamento Núm. 9221 establece que cualquier oficial correccional o funcionario del DCR puede presentar una querella, cuando sea testigo de un acto o incidente prohibido, o infracción a las norma y reglamentos del DCR por parte de un miembro de la población correccional o tiene un motivo fundado para creer que un miembro de la población

correccional cometió alguna infracción a las normas o reglamentos del DCR. Regla 6 del Reglamento Núm. 9221.

La misma disposición reglamentaria dispone que la querella disciplinaria debe presentarse dentro del término de dos (2) días laborables después del incidente, o dentro del término de dos (2) días laborables desde que el querellante tuvo o debió tener conocimiento del incidente. Esta habrá de ser redactada en letra legible, y contendrá la siguiente información:

1. Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente;

2. Nombre del miembro de la población correccional querellado;

3. Nombres de los testigos, si alguno;

4. La prueba obtenida;

5. Manejo de la prueba;

6. Nivel y código correspondiente al acto prohibido imputado;

7. Nombre del querellante;

8. Identificación precisa del querellante (puesto, número de placa, posición, lugar de trabajo);

9. Fecha de radicación de querella disciplinaria;

10. Si se obtuvo algún tipo de información confidencial, proceder de acuerdo con lo dispuesto en la Regla 31 y la Regla 32 de este Reglamento. Regla 6 del Reglamento Núm. 9221.

Por causa de lo anterior, la investigación administrativa comenzará en el término de un (1) día laborable, contado a partir de la notificación de la querella disciplinaria al miembro de la población correccional, y deberá concluir dentro de un término de diez (10) días laborables. Regla 13, Reglamento Núm. 9221, *supra*.

Además, el Reglamento Núm. 9221 establece que los procedimientos inherentes a la investigación son:

1. Entrevistar e interrogar a toda persona relacionada, directa o indirectamente con los hechos imputados, incluyendo al miembro de la población correccional querellado o los testigos solicitados por éste.

2. El querellado debe ser orientado sobre su derecho a guardar silencio y podrá recibir asistencia del Oficial de Querellas.

3. Si el querellado quiere hacer una declaración, podrá completar el formulario correspondiente. Si el querellado no sabe leer o escribir, el Oficial de Querellas deberá tomar la declaración de manera detallada, con cualquier información adicional que pueda observar con respecto al comportamiento del miembro de la población correccional durante la entrevista.

4. El Oficial de Querellas deberá investigar en detalle la versión de hechos presentada por el querellado.

5. El Oficial de Querellas le facilitará el formulario correspondiente y obtendrá las declaraciones de estos testigos; y las respuestas a las preguntas formuladas por el miembro de la población correccional.

6. El Oficial de Querellas deberá registrar las declaraciones de los testigos de manera exacta y detallada. No obstante, los testigos tienen la opción de presentar su declaración por escrito o responder directamente a las preguntas realizadas.

7. El Oficial de Querellas verificará el manejo y disposición correcta de la prueba/evidencia y preparará un informe de ello.

8. El Oficial de Querellas podrá comentar sobre asuntos que haya podido percibir personalmente durante la investigación, incluyendo, pero sin limitarse, al comportamiento o el semblante del querellado o de un testigo, aspectos de la distribución de la planta física de la institución correccional y otros similares que puedan ser pertinentes al caso.

9. El Oficial de Querellas redactará un informe completo y detallado que contenga las declaraciones de todos los testigos y la prueba/evidencia recopilada.

10. De ser necesario, el Oficial de Querellas podrá solicitar información a la Unidad de Servicios Sociopenales, Unidad de Récord Criminal, Programa de Comunidad, Programa de Desvío y Comunitarios y Área Médica.

11. Los parámetros para el uso y el manejo de información confidencial se encuentran en la Regla 31 y Regla 32 de este Reglamento.

12. Si el Oficial de Querellas presenció o tiene conocimiento personal del incidente que se encuentra ante su consideración para la correspondiente investigación, deberá inhibirse de ese caso en particular, y otro Oficial de Querellas que esté asignado a la institución tomará la investigación a su cargo. En el caso que no haya otro Oficial de Querella de la misma institución podrá asistirle de otra institución correccional. Regla 12 del Reglamento Núm. 9221.

Una vez culminada la investigación, el Oficial de Querellas coordinará con la Oficina de Disciplina de Confinados la calendarización de la agenda y referirá el expediente administrativo del caso al Oficial Examinador para el señalamiento y celebración de la correspondiente vista disciplinaria. Regla 13, Reglamento Núm. 9221. Dicha vista deberá celebrarse dentro de un término no mayor de treinta (30) días laborables siguientes a la conclusión del Informe de Investigación. Regla 26, Reglamento Núm. 9221.

Por último, la Regla 17 del Reglamento Núm. 9221 establece las medidas disciplinarias a las que se puede enfrentar un confinado por violentar alguna de sus reglas. En lo pertinente, el inciso 5 de dicho Reglamento establece que:

La privación de los privilegios podrá incluir la compra de comisaría, recreación activa, visita, correspondencia, actividades especiales y cualquier otro que se le conceda en la institución.

a. Procederá la imposición de privación de privilegios como medida disciplinaria, aun cuando el acto prohibido no esté

relacionado con los privilegios retirados, así como en aquellas instancias en que la situación particular del caso permita concluir que dicha medida disciplinaria tendrá un efecto significativo en el mejoramiento del comportamiento del miembro de la población correccional.

b. […]

c. Se podrá privar del privilegio de la compra en comisaría, a excepción de los artículos de higiene personal y salud. Estos deben estar disponibles a la venta aun cuando se encuentre sancionado el miembro de la población correccional.

d. […]

e. Los límites específicos de tiempo para la privación de privilegios de acuerdo al nivel de severidad del acto prohibido serán los siguientes:

1. Nivel I – Privación de privilegios de treinta (30) a sesenta (60) días por violación y el término será determinado por el Oficial Examinador.

2. Nivel II – Privación de privilegios de uno (1) a treinta (30) días por violación, a ser determinado por el Oficial Examinador. Regla 17 Reglamento Núm. 9221.

### III.

En el caso de autos, el recurrente cuestiona la medida disciplinaria impuesta por el Departamento de Corrección que tuvo como resultado la suspensión de los privilegios de visita y comisaria por treinta (30) días. Sostuvo que, el DCR no tomó en consideración que el alegado acto prohibido no lo cometió él, sino su compañero de celda, quien presentó una declaración exponiendo que el peticionario no tuvo nada que ver con dicho acto.

De los documentos anejados se desprende que el 22 de mayo de 2024 efectuaron un registro en la celda 202 del recurrente y su compañero de celda, donde observaron que la salida del conducto del aire acondicionado estaba tapado con papel plástico, lo cual está expresamente

prohibido por el Reglamento Núm. 9221, Código 104. A su vez, surge que el 2 de julio de 2024 llevaron a cabo una vista administrativa, en la cual aparentemente este solo negó los hechos.

Ante ello, resulta evidente que la Oficial Examinadora tomó en consideración todos los hechos, adjudicó la querella e impuso la sanción que a su discreción entendió correspondiente dentro del marco legal aplicable. Asimismo, según consta del expediente administrativo, la alegada declaración del compañero de celda, que realizó el 30 de mayo de 2024, no le mereció credibilidad a la Oficial Examinadora.

Por ello, concluimos que la medida disciplinaria administrativa no atenta contra la dignidad humana del recurrente, ni denota ser caprichosa. Además, es proporcional a la gravedad del acto prohibido y adecuada para lograr los propósitos consignados en el Reglamento Núm. 9221.

En conclusión, toda vez que el recurrente no pudo rebatir la presunción de corrección de la determinación administrativa, procedemos a confirmarla.

**IV.**

Por los fundamentos antes expuestos, se **CONFIRMA** el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones